**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| *JOHN WATSON LTD AKA WATSON GLOVES; John Watson Ltd.*<br><br>Plaintiffs,<br><br>v.<br><br>U.S. CUSTOMS & BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as COMMISSIONER of U.S. CUSTOMS & BORDER PROTECTION; and the UNITED STATES OF AMERICA,<br><br>Defendants. | Court No.: 26-cv-03791 |

**AMENDED COMPLAINT**

JOHN WATSON LTD AKA WATSON GLOVES and John Watson Ltd. ("Plaintiffs"), by and through their undersigned attorneys, alleges and states as follows:

1. This action concerns Defendants' unlawful imposition of duties on Plaintiffs' imported merchandise.

2. Beginning in February 2025, through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose tariffs ("IEEPA Duties") on goods imported from nearly every foreign country, including countries from which Plaintiffs source their imports.

3. Plaintiff JOHN WATSON LTD AKA WATSON GLOVES is the importer of record of merchandise subject to the IEEPA Duties and has paid IEEPA Duties.

4. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v.*

*Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)). That same day, President Trump issued Executive Order 14389,[1] formally ending the IEEPA Duties, in light of the Supreme Court's decision in *Learning Resources*.

5. The Supreme Court also confirmed that challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" the Court of International Trade. *Learning Resources.* at 5. Thus, this Court has jurisdiction and authority to order remedial relief and refunds of IEEPA Duties paid by importers.

6. On March 2, 2026, the Court of Appeals for the Federal Circuit issued a mandate to lift the stay on all proceedings relating to the *V.O.S. Selections* matter, thus leading the way for the remand in that case to be returned to this Court.

7. This separate action remains necessary because, notwithstanding this Court's orders directing Defendants to liquidate and reliquidate entries subject to IEEPA Duties, Defendants have taken the position on appeal that refunds for finally liquidated entries may only be obtained by importers, including Plaintiffs, who have filed their own action with this Court, and that absent such an action there is no guarantee that Plaintiffs will receive a refund for any collected IEEPA Duties held to be unlawful.

8. Accordingly, for the reasons set out in *Learning Resources*, Plaintiffs seek a full refund, with interest as required by law, from Defendants of all IEEPA Duties Plaintiffs have paid to the United States as a result of the executive orders challenged in this lawsuit, including through potential action by this Court to order reliquidation in the event that any entries that were subject to IEEPA Duties liquidate.

[1] Exec. Order 14389, *Ending Certain Tariff Actions*, 91 Fed. Reg. 9,437 (Feb. 25, 2026).

9. Plaintiffs additionally seek a declaration that the estoppel determination in *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.* Consol. Ct. No. 25-00255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025) ("*AGS v. CBP*") applies in this matter, and that Defendants are therefore estopped from objecting to court-ordered reliquidations of customs entries subject to the IEEPA tariffs.

**PARTIES**

10. Plaintiff JOHN WATSON LTD AKA WATSON GLOVES is a Canadian company, incorporated in Canada, and an importer of record of various goods on which IEEPA Duties were paid.

11. Plaintiff John Watson Ltd. is an American company, incorporated in Wyoming, and indirectly paid IEEPA Duties as a consignee of various goods on which IEEPA Duties were paid by JOHN WATSON LTD AKA WATSON GLOVES.

12. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

13. Defendant Rodney S. Scott is the Commissioner of CBP. In this official capacity, he oversees CBP's collection of duties paid by Plaintiff.

14. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

15. Defendants are referred to collectively in this Complaint as "Defendants".

## JURISDICTION

16. The Court possesses subject matter jurisdiction over this action under 28 U.S.C. § 1581(i). *See Learning Resources*, slip op. at 5, n.1.

17. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

18. Plaintiffs have standing to sue in this case as they are the importer of record for the goods imported into the United States that were subject to the unlawful IEEPA Duties or have otherwise paid the unlawful IEEPA Duties. Consequently, Plaintiffs are "adversely affected or aggrieved" by agency action within the meaning of the APA. 5 U.S.C. § 702; 28 U.S.C. § 2631(i). Remedial relief, as well as monetary relief, would redress those injuries.

19. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). On February 1, 2025, President Trump issued the first executive order that resulted in the collection of IEEPA Duties. That order was published in the Federal Register shortly thereafter. This action is filed within two years of the date that the first (and all consecutive) orders were issued and published and is also within two years from the date on which Plaintiff first paid IEEPA Duties.

## GENERAL PLEADINGS

### I. The IEEPA Tariff Executive Orders

20. On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China.[2] Each executive order was premised on IEEPA authorizing the tariffs. Collectively, these are referred to in this Complaint as the "Trafficking Tariff Orders." Pursuant to these Trafficking Tariff Orders, CBP assessed additional IEEPA duty upon Plaintiff's entries.

21. President Trump subsequently modified the China Trafficking Tariff Order.[3]

22. On April 2, 2025, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041 (the "Reciprocal Tariff Order"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*.[4] The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id*. at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id*. Pursuant to the Reciprocal Tariff Order, CBP assessed additional IEEPA Duties upon Plaintiff's entries.

23. Following the imposition of these measures, the President issued further executive orders adjusting the effective dates, and/or tariff rates.[5]

---

[2] Exec. Order No. 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14194, *Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[3] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

[4] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

[5] *See, e.g.,* Exec. Order No. 14259*, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025); Exec. Order No. 14266,

24. To implement this new tariff structure, CBP revised the Harmonized Tariff Schedule of the United States, requiring that goods subject to the challenged tariffs be entered under new tariff codes.

25. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, *et al. v. Donald J. Trump*, *et al.*, No. 25-cv-00066 (Dkt. 2). As discussed below, this Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed.

26. In the months since the *V.O.S. Selections* complaint was filed, President Trump, invoking IEEPA, has issued additional executive orders imposing additional tariffs and modifying others.

27. CBP continued to collect duties imposed by the IEEPA executive orders (the "IEEPA Tariff Orders") while the *V.O.S. Selections* litigation and related litigation remained pending, and only announced on February 22, 2026, following President Trump's issuance of Executive Order 14389,[6] that duties imposed under the IEEPA Tariff Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026."[7]

28. By this Complaint, Plaintiff seeks relief as a result of all duties they have paid or will pay to the United States arising from the IEEPA Tariff Orders.

---

*Modifying Reciprocal Tariff Rates to Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025), 90 Fed. Reg. 15,625 (Apr. 15, 2025).

[6] Exec. Order 14389, *Ending Certain Tariff Actions*, 91 Fed. Reg. 9,437 (Feb. 25, 2026).

[7] Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb 22, 2026), available at https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_ WIDGET_2.

## II. <u>CBP's Implementation of the IEEPA Tariff Orders</u>

29. CBP is charged with the assessment and collection of duties, including the IEEPA Duties. *See* 19 U.S.C. §§ 1500, 1502.

30. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

31. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11. ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

32. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

33. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

**III. <u>Liquidation</u>**

34. "Liquidation" means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

35. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin and HTSUS classification for the imported goods. *See* 19 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

36. Ordinarily, within 314 days of entry, CBP "finalizes" the appraisement of the entered merchandise, and confirms the value, classification, and duty rate applicable thereto. *See* 19 U.S.C. § 1500 and 19 U.S.C. § 1504.

37. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b). Liquidation typically occurs approximately 314 days after entry.

38. Once liquidation has occurred, and if the liquidation is protestable, the importer of record has 180 days after liquidation to file a protest contesting the liquidation and any other CBP decisions encompassed therein. 19 U.S.C. § 1514(a). But not all liquidations are protestable under 19 U.S.C. § 1514. Where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *See Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024); *Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994).

39. This Court has decided that a protest of a liquidation of an entry subject to IEEPA Duties under this Court's § 1581(a) jurisdiction would be futile because CBP's collection of such duties is purely ministerial. *See AGS v. CBP*, at 7 ("In such a case, a § 1581(a) protest would be

futile because 'all that Customs is authorized to do is collect the' duty") (citing *Thomson Consumer Elecs., Inc. v. United States*, 247 F.3d 1210, 1215 (Fed. Cir. 2001)). Additionally, this Court has stated "[b]ecause Customs has no authority to make any decision regarding the legality or constitutionality of the Executive Orders at issue, this court has jurisdiction pursuant to 28 U.S.C. § 1581(i) rather than § 1581(a)…" *Id.*

40. In *AGS v. CBP*, the Court also separately determined that the defendants—parties that are identical to Defendants in this case—are estopped both "in [*AGS v. CBP*] and in related cases" from objecting to court-ordered reliquidations of customs entries subject to the IEEPA tariffs. *Id.* at 3–5.

41. The factual circumstances presented in the consolidated plaintiffs' pleadings in *AGS v. CBP* are substantively the same as those presented here.

42. On March 4, 2026, this Court ordered CBP, with respect to any and all unliquidated entries entered subject to IEEPA duties, to liquidate those entries without regard to the IEEPA duties, and ordered any entries that had been liquidated but for which liquidation was not final to be reliquidated without regard to IEEPA duties. *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF No. 21 (Ct. Int'l Trade Mar. 4, 2026). On March 6, 2026, this Court suspended the immediacy requirement of its order to allow CBP to develop an automated tool to process the refunds. *Id.*, ECF No. 33. On March 27, 2026, this Court further amended its order to direct that any liquidated entries for which liquidation is final also be reliquidated without regard to IEEPA duties. *Id.*, ECF No. 50.

43. In response to this Court's orders, CBP developed the Consolidated Administration and Processing of Entries ("CAPE") tool within its Automated Commercial Environment ("ACE") system to process and consolidate refunds, with interest, of IEEPA duties. CAPE Phase 1 became

available to importers and brokers on April 20, 2026, and applied only to unliquidated entries and entries that liquidated within the 80 days preceding the filing of a CAPE declaration. CAPE Phase 2 became available on June 29, 2026, and extended CAPE to certain entries flagged for reconciliation that remain unliquidated or within 80 days of liquidation. As of the date of this Complaint, CBP has not extended CAPE to entries for which liquidation became final more than 80 days before a CAPE declaration is filed, nor to entries covered by an open protest, or otherwise excluded from CAPE's scope.

44. Notwithstanding this Court's orders directing reliquidation of all entries subject to IEEPA duties, including finally liquidated entries, Defendants have taken the position, including in their pending appeal to the Court of Appeals for the Federal Circuit, that they lack authority to reliquidate or refund IEEPA duties on finally liquidated entries absent an importer-specific court order, and that any universal relief extending to importers who have not filed their own actions in this Court exceeds this Court's jurisdiction and equitable authority. *See V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 88 (Ct. Int'l Trade May 29, 2026). On August 10, 2026, the United States filed its opening appellate brief renewing that position while representing that it intends to comply with importer-specific reliquidation orders. *See* Opening Br. for Appellants, *V.O.S. Selections, Inc. v. Trump*, Nos. 2026-1895, -1897, -1899, at 19 (Fed. Cir. Aug. 10, 2026).

45. On July 15, 2026, this Court indicated that it would enter importer-specific orders directing CBP to reliquidate entries more than 80 days past the date of liquidation in each of the approximately 3,700 IEEPA-related actions assigned to the Court. *See, e.g.*, *Euro-Notions Florida, Inc. v. U.S. Customs & Border Prot.*, No. 25-00595, ECF No. 46 (Ct. Int'l Trade July 15, 2026). This action is therefore necessary to ensure Plaintiffs obtains their own importer-specific judgment and order of reliquidation, given Defendants' position that CBP cannot voluntarily reliquidate

finally liquidated entries, and cannot be compelled to do so as to importers, including Plaintiffs, absent an order specific to that importer.

## IV. The Supreme Court has held the IEEPA Orders to be Unlawful

46. The IEEPA Tariff Orders reference IEEPA, 50 U.S.C. § 1701 *et seq*., the National Emergencies Act, 50 U.S.C. § 1601 *et seq*., section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

47. Defendants have relied solely on the IEEPA statute to impose and collect the challenged IEEPA Duties.

48. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections*, holding that IEEPA did not authorize assessment of the IEEPA Duties. This Court permanently enjoined the government from enforcing the IEEPA Duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

49. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

50. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Duties are unlawful. *See V.O.S. Selections*.

51. In a separate lawsuit filed by a different group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Resources Inc. v. Trump,* 784 F. Supp. 3d 209 (D.D.C. 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*.

52. The cases were consolidated, with argument, before the Supreme Court on November 5, 2025.

53. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.[8]

## V. Plaintiffs Paid IEEPA Duties

54. As of the date of this Complaint, Plaintiffs have paid IEEPA Duties imposed by the IEEPA Tariff Orders.

55. The goods Plaintiffs import into the United States that are subject to IEEPA tariffs entered the United States under new HTSUS codes from foreign countries.

56. Plaintiffs have paid IEEPA Duties on numerous entries.

## STATEMENT OF CLAIM

### COUNT ONE
**(The IEEPA Tariff Orders Are Unlawful For The Reasons Stated By the Supreme Court in *Learning Resources*)**

57. Plaintiffs incorporate paragraphs 1 – 56 above by reference.

58. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this court's ruling and the Federal Circuit's affirmance of this court's opinion in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), aff'd, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

59. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task … is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does

[8] This complaint cites to the "*Learning Resources*" slip opinion because that was the lead case at the Supreme Court for purposes of the case caption. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the Federal Circuit's decision in *V.O.S. Selections* was affirmed.

not." *Learning Resources*, slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's decision, which for its part had affirmed this Court's ruling on the merits of the IEEPA tariffs. *Id.* at 21.

60. The IEEPA Tariff Orders purport to impose duties and to modify the HTSUS solely under IEEPA.

61. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any postjudgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

62. This Court is bound by the *Learning Resources* decision and as a result of that decision should order refunds of all IEEPA duties paid by Plaintiffs, with interest as provided by law.

63. To the extent Plaintiffs' customs entries subject to the IEEPA tariffs have been liquidated, Plaintiffs seek a declaration that this Court's estoppel ruling in *AGS v. CBP*, Consol. Ct. No. 25-00255, Slip Op. 25-154, at 3–5, applies and estops Defendants from objecting to court-ordered reliquidations of customs entries subject to the IEEPA tariffs.

64. Because Defendants have appealed the scope of this Court's reliquidation orders as to importers that have not filed their own actions, and have represented that they intend to comply only with importer-specific reliquidation orders, Plaintiffs further seek an importer-specific order and judgment of reliquidation to ensure Plaintiffs' right to a refund of IEEPA Duties is not contingent on the outcome of that appeal.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court:

(1) order CBP to reliquidate any entries that have been processed through final liquidation with IEEPA Duties;

(2) order CBP to liquidate all unliquidated entries subject to IEEPA Duties without IEEPA Duties;

(3) declare that the Court's estoppel ruling in *AGS v. CBP* applies in this case and estops Defendants from objecting to court-ordered reliquidations of customs entries subject to the IEEPA tariff;

(4) order the United States to refund to Plaintiffs the IEEPA Duties collected on those entries, with interest as provided by law;

(5) award Plaintiffs their reasonable costs and expenses, including attorneys' fees, incurred in bringing this action; and

(6) grant such further relief as this Court deems just and proper.

Dated: September 1, 2026

Respectfully submitted,

/s/ J. Scott Maberry
J. Scott Maberry
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006
Telephone: (202) 747-1909
Facsimile: (202) 747-1901
smaberry@sheppard.com
*Counsel for Plaintiffs*